Jones' Adm'r v. L. & N. R. R. Co.

CASE 97—RAILROADS, CONTRIBUTORY NEGLIGENCE—MARCH 28, 1885.

# Jones' Adm'r v. L. & N. R. R. Co.

### APPEAL FROM SHELBY CIRCUIT COURT.

1. Although contributory neglect by the deceased will not relieve from responsibility a party by whose willful neglect the life of deceased has been destroyed, yet, if the injury received by the deceased was caused wholly by his own negligence, no action can be maintained.
2. Appellee would be answerable for the injury to deceased, although it was brought about by his own act, if that act had been the necessary, legal or natural consequence of the original wrongful act.
3. The court did not err in directing a peremptory instruction for appellee.

J. W. HEAD AND A. DUVALL FOR APPELLANT.

1. The demurrer of appellant to the second paragraph of answer of appellee should have been sustained.
2. The motion of appellant to strike out the said paragraph should have been sustained.
3. There was proof conducing to show willful neglect on the part of appellee, its agents and servants, other than the decedent himself.
4. The court erred in giving the peremptory instruction in favor of the appellee. (Claxton v. Lex. and Big Sandy R. R. Co., 13 Bush, 642; 7 Ib., 235; Shannon & Redfield on Neg., 37 and 93; 10 Bush, 263; 81 Ky Rep., 403; 9 Bush, 522; 2 Duv., 576; Archbold's Crim. Prac. and Pl., volume 1, 769, 774, 783; 8 Bush, 166; 12 Ib., 474.)

BULLOCK & BECKHAM, H. W. BRUCE AND W. LINDSAY FOR APPELLEE.

1. It is clear that the court properly refused to sustain the demurrer to appellee's answer.
2. And that the court, after hearing the evidence, did not err in giving a peremptory instruction for appellee. (2 Duv., 577; 4 Bush, 509; 9 Ib., 531; 6 Ib., 580; 4 Ib., 509; 81 Ky., 403; 10 Bush, 263; 13 Ib., 636; 103 U. S., 261.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant states in his petition that his intestate was, at the time of his death, employed in the service of appellee as a brakeman on its railroad train, composed of baggage, passenger and freight-cars, and while

actively engaged in the performance of his duties as such, in seeing that the rear cars were coupled and attached, was killed by being thrown by the train against a bridge over which it was running at an unusual rate of speed, which killing was occasioned by the willful neglect of appellee, its agents and servants.

The first paragraph of the answer contains simply a traverse of the material allegations of the petition. But in the second it is stated that the deceased negligently placed his body outside the car on which he was riding just before it entered the bridge mentioned, the location of which he well knew, whereby it came in contact with the bridge, and he was knocked from the train, and his head and shoulders injured so that he died therefrom ; and that his death was wholly caused by his own neglect.

A general demurrer to the second paragraph was filed, and a motion made also to strike it from the answer; but both were overruled, and this action of the court is made ground for reversal.

Under the Civil Code, section 113, an answer may contain as many matters of estoppel and of avoidance, legal or equitable, total or partial ; and may make as many traverses as there may be grounds for in behalf of the pleader. And if there be more than one, each must be stated in a separate, numbered paragraph.

In the second paragraph of the answer is stated the manner in which the deceased lost his life, which is essentially different from that described in the petition, and that the injury was caused wholly by his own neglect. And if the matter thus relied on is

sufficient at all as a defense or in avoidance of the action, he had right to plead it in a separate para- graph.

Though it has been repeatedly held by this court, and may be considered settled, that contributory neg- lect on the part of the deceased will not relieve a party from responsibility under section 3, chapter 57, General Statutes, by whose willful neglect his life has been destroyed, nevertheless if it be true, as stated in the second paragraph of the answer, that the inju- ry received by the deceased was caused wholly by his own negligence, it necessarily results that his life was not lost or destroyed by the willful neglect of appellee or its agents and servants, and this action can not be maintained. But whether the circumstances under which the injury was received, as stated in the answer, are sufficient to relieve appellee from legal responsibility, of course depends upon the facts of the whole case. And this brings us to the consid- eration of the next error assigned, which is on ac- count of the action of the court in giving, at the close of the evidence offered by appellant, a peremptory instruction to the jury to find for appellee.

The train on which the deceased was employed when it left Anchorage station was composed of fourteen or fifteen freight-cars, and a passenger and baggage car, the two latter being at the rear end. But when it reached Scott's station, for some reason not explained, the position of the cars was so changed that eight or nine of the freight-cars were put in front, and five or six of them in rear of the passenger and baggage cars. And this change made it necessary for the deceased,

·who acted as middle brakeman, to occupy as his position the baggage car instead of on top of one of the freight-cars where he had previously been.

The only witness who saw the deceased at the time ·he received the injury from which he died was a fellow-brakeman, whose position was on top of one of the freight-cars nearer the engine than the baggage car, and who was at the time looking towards the rear end of the train in order to discover and give warning of it in case the rear cars became uncoupled. He testified that he saw the deceased either at the door or on the steps at the end of the baggage car when it was a car length or more from the bridge, looking back towards the rear end of the train, his head and part of one ·shoulder being out, and saw him strike against ·the bridge whereby his head and left shoulder were so ·much injured that he died very soon after.

According to the uncontradicted testimony of that witness, it is manifest that the life of the deceased was ·destroyed by his own act, in placing his body while ·the train was moving so far beyond the side of the baggage car as to bring it in contact with the bridge, which was about two feet wider than the car.

The evidence shows omissions of duty and violation ·of necessary and prescribed rules for operating railway trains by those in charge at the time the deceased was ·killed. But in order to authorize a recovery in this case, not only must willful negligence in the meaning ·of the statute on the part of those in charge of the train be shown, but it must appear that such neglect ·was the proximate cause of the injury to the deceased, ·or that such injury would, under the circumstances

existing, be the natural, probable or ordinary result of such neglect.

The evidence establishes the following facts which show negligence on the part of those having control of the train when the deceased was injured. In running what is called a mixed train, it is safer for both passengers and employes that the passenger and baggage cars should be in rear of the freight-cars, yet no satisfactory reason is given for the position the cars occupied when the deceased was injured. One of the rules of the company requires a red flag kept on the hindmost car, to enable the engine man himself to see it in case the rear cars became uncoupled. But it was not done by those in charge of that train, and the duty was consequently imposed on the brakeman to watch the rear cars; and as they had become uncoupled as many as two times before reaching the bridge, where the deceased was injured, there was a necessity for increased vigilance on their part. It also appears that the train was running at a greater rate of speed, when it crossed the bridge, than the prescribed rules of the company authorized, and that, although the proper signal was whistled, the bell was not rung as the train approached the bridge.

It is not necessary to determine whether those in charge of the train were or not guilty of willful neglect, unless it be made to appear that the injury to the deceased was either the immediate and direct result of such negligence, or else that the act of the deceased was such as it was the legal duty of those in charge of the train to have foreseen and provided against.

The general rule of law is, that whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, although those consequences be immediately and directly brought about by the intervening agency of others, provided their acts, causing the damage, were the necessary or legal and natural consequences of the original wrongful act. (Addison on Torts, 7.) And in this case appellee would be answerable for the injury to the deceased, notwithstanding it was immediately and directly brought about by his own act, if that act had been the necessary legal or natural consequence of the neglect on the part of those in charge of the train, or if the act of the deceased, according to the ordinary course of events, had been the usual or probable sequence of the neglect. But those in charge of the train could not be required to foresee and provide against the extraordinary and reckless act of the deceased. For the evidence shows that he had been employed as brakeman on that railroad long enough to become fully acquainted with the nature of his hazardous business and of the location and condition of the bridge. It may be assumed that he was, at the time he received the injury, in the performance of what he conceived to be his duty, and that he placed his body in the position it was when the injury was received, for the purpose of ascertaining whether the cars were coupled; still there was no necessity, nor was he required at that time to recklessly expose himself to the injury he received, for there was another brakeman on top of the freight-car who was performing the same ser-

vice, and besides, the deceased could and should have awaited the crossing of the bridge before exposing himself. Nor can the act of the deceased and consequent injury be directly or immediately attributed to either the failure to ring the bell or the increased rate of speed of the train. For it is clear that the ringing of the bell would not have been more apt to attract his attention than the whistle of the engine, and that the injury would have occurred even if the train had been running at the usual rate of speed.

It is probable that if the position of the cars had not been changed at Scott's station, the deceased would, when the train crossed the bridge, have been on top of a freight-car, and consequently not injured by placing his body where it would inevitably come in contact with the bridge. But even conceding that those in charge of the train were guilty of negligence in changing the positions of the cars, the injury to the deceased was not the proximate, probable or natural result of the change.

In this case the deceased, with a knowledge of the risks and dangers incident to his employment, and familiar with the peculiar danger of exposing his person at the time and place he did do, himself caused the destruction of his life, and did it in a manner and under circumstances that could not have, with reasonable diligence on the part of those controlling the train, been foreseen and provided against. In our opinion, therefore, it is clear from the evidence that the life of the deceased was not, in legal contemplation, lost or destroyed by the willful neglect of appel-

lee's agents and servants. And the peremptory instruction was properly given.

Judgment affirmed.